IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **I N D I C T M E N T** |
| v. | Case No. _____ |
| DARREN WADE TRONSON | Violation:  18 U.S.C. §§ 982(a)(2)(A) and 1014 |

COUNT ONE

**False Statement to Influence the United States Department of Agriculture Risk Management Agency**

The Grand Jury Charges:

I.  FEDERAL CROP INSURANCE

The federal government provides crop insurance to farmers through a partnership between private insurance companies and the Risk Management Agency (RMA) of the United States Department of Agriculture (USDA).  This system that provides crop insurance policies to farmers is subsidized and reinsured by a government-owned corporation called the "Federal Crop Insurance Corporation" (FCIC).  The RMA administers and oversees all programs approved by the FCIC.  The RMA/FCIC does not provide insurance directly to farmers.  Rather, the RMA/FCIC uses private insurance companies to sell and service FCIC-approved Multi-Peril Crop Insurance (MPCI) policies.  The RMA/FCIC provides payments and reimbursements at every stage of the crop insurance process.  Specifically, the RMA/FCIC pays the private companies a subsidy to sell and service the MPCI policies, subsidizes the premiums themselves to

lower the costs for farmers/policyholders, and reimburses the insurance companies for the indemnity payments for crop losses made to the farmers/policyholders.

    A. General Provisions of the MPCI – Basic Provisions

The MPCI policy provides crop insurance against unavoidable crop losses that are due to a naturally occurring event. Specifically, Section 12 of the Common Crop Insurance Policy, Basic Provisions, states in relevant part:

> 12. Cause of Loss
>
> Insurance is provided only to protect against unavoidable naturally occurring events. A list of the covered naturally occurring events is contained in the applicable Crop Provisions. All other causes of loss, including but not limited to the following, are NOT covered:
>
> (a) Any act by any person that affects the yield, quality or price of the insured crop (e.g., chemical drift, fire, terrorism, etc.);
>
> (b) Failure to follow recognized good farming practices for the insured crop;

    B. Production Guarantee

The Actual Production History (APH) is the process used to establish and determine production guarantees for each crop unit. APH establishes the amount of insurance a producer is eligible to receive on each crop unit insured. Each crop unit has an approved yield based upon the producer's actual yield (in pounds, bushels, hundredweight, etc.) per acre. The production guarantee (per acre) is the approved yield multiplied by the coverage level percentage elected on the insurance policy.

Each time a producer starts farming new ground, starts farming in a new county, or starts using a new type of potato, the producer starts a new APH database for that unit. Over time, the producer's actual yield on that new unit will be used to set the production guarantee. When a producer has fewer than four years of yield in the producer's production history, the producer is assigned a County Transitional Yield (T-Yield). The T-Yield is an estimated yield determined by FSA and FCIC for each county and is used to calculate the production guarantee in the absence of enough years of actual production.

C.  Insured Losses/Filing a Claim

When a properly insured crop is damaged by an event (insurable cause of loss) covered by the policy, the insured files a Notice of Loss with the insurance company. Upon receipt of the Notice of Loss, the insurance company assigns a loss adjuster to inspect the crop and determine the amount of loss. Based on the information provided by the insured, the adjuster completes a Production Worksheet (claim form). The insured must sign the Production Worksheet certifying the cause of loss (damage) to the insured crop; the amount of harvested and appraised production; and that all the information is true and complete and that a false statement may result in criminal penalties.

If any material fact is intentionally concealed or mispresented on the policy or claim documents and the fraudulent documents are submitted to the insurance company for payments, the policy is void. Therefore, when the policyholder, or anyone at his or her direction, intentionally conceals or misrepresents a material fact, the policyholder is not entitled to any payment and if the policyholder has already received payment, that payment must be returned or repaid.

D.  Claim Adjusting and Payment

After the insurance company's loss adjuster completes the Production Worksheet and the Production Worksheet is certified as correct by the insured, the claim is sent to the insurance company to calculate the amount of loss and indemnity payment.  After the amount of loss and indemnity payments are calculated, the insurance company pays an indemnity to the insured for the loss on the insured crop.  In turn, the insurance company transmits the policy and claim data to FCIC, wherein the data is electronically verified and validated.  The FCIC then reimburses the insurance company for the crop insurance indemnity paid to the insured.

II.  DARREN WADE TRONSON

At all times material to this Indictment, DARREN WADE TRONSON farmed in North Dakota under his own name and under DL Farms LLC, which he established in 2018.  DARREN WADE TRONSON has produced potatoes, corn, dry beans, sugar beets, wheat, and soybeans.  DARREN WADE TRONSON farmed non-irrigated potatoes in Traill County and Grand Forks County in North Dakota.

III.  FAILURE TO FOLLOW GOOD FARMING PRACTICES

Good Farming Practices are defined in the Common Crop Insurance Policy Basic Provisions as "the production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance . . ., which are those generally recognized by agricultural experts, depending on the practice, for the area."

Good farming practices for potatoes includes guidance for seeding rates, seed cutting fertilizer inputs, soil management, and herbicides.  DARREN WADE TRONSON planted fewer seed and applied less fertilizer than recommended by the NDSU Extension Office to obtain a yield equal to the Grand Forks County T-Yield (205 hundredweight potatoes per acre).  By reducing the amount of seeding and fertilizer inputs, DARREN WADE TRONSON has saved significant costs that would otherwise be required to follow good farming practices.

In crop year 2018, DARREN WADE TRONSON's Grand Forks County potato yield, approximately 60 hundredweight potatoes per acre, was approximately one-quarter of the average yield of other producers growing non-irrigated potatoes of the same variety.  Other producers averaged 229 hundredweight potatoes per acre in the same county.  In 2017, comparable non-irrigated potato yields were over 300 hundredweight potatoes per acre.  In 2017, DARREN WADE TRONSON's yields were approximately 20 hundredweight potatoes per acre.

By farming new land and planting different varieties, DARREN WADE TRONSON established 46 different APH databases through 2018.  DARREN WADE TRONSON's actual average yield across all his APH databases equaled 41 hundredweight per acre.  However, because DARREN WADE TRONSON continually established new APH databases, his production guarantee was not based on his actual production (41 hundredweight/acre), but on the county T-Yields, which averaged 189 hundredweight/acre.

Over decades, DARREN WADE TRONSON has minimized the cost of his farming inputs, resulting in significantly less production than similarly situated potato producers in the counties where DARREN WADE TRONSON grows potatoes. However, DARREN WADE TRONSON's low yields have not affected his production guarantee, because he farms new land or new varieties with enough frequency so that his production guarantee is based on the county T-Yield and not his actual production numbers. Since crop year 2000, DARREN WADE TRONSON has been paid approximately $5.7 million in indemnities just for potatoes.

On or about February 19, 2019, in the District of North Dakota,

DARREN WADE TRONSON,

did knowingly make any false statement or report for the purpose of influencing in any way the action of an insurance company and the United States Department of Agriculture, acting through the Risk Management Agency/Federal Crop Insurance Corporation, in connection with the payment of crop insurance benefits, to wit: DARREN WADE TRONSON knowingly signed a production worksheet certifying the loss of potatoes in Grand Forks County due to excess moisture on July 7, 2018, through July 10, 2018, and dry weather on August 31, 2018, knowing the loss was attributable to failure to employ good farming practices, to wit: insufficient seed and fertilizer, in order to obtain inflated crop insurance indemnities to which he was not entitled;

In violation of Title 18, United States Code, Section 1014.

## COUNT TWO

**False Statement to Influence the United States Department of Agriculture Risk Management Agency**

The Grand Jury Further Charges:

The Grand Jury realleges and incorporates by reference the allegations of Count One of this Indictment.

On or about February 19, 2019, in the District of North Dakota,

DARREN WADE TRONSON

did knowingly make any false statement or report for the purpose of influencing in any way the action of an insurance company and the United States Department of Agriculture, acting through the Risk Management Agency/Federal Crop Insurance Corporation, in connection with the payment of crop insurance benefits, to wit: DARREN WADE TRONSON knowingly signed a production worksheet certifying the loss of potatoes in Traill County due to drought on August 31, 2018, knowing the loss was attributable to failure to employ good farming practices, to wit: insufficient seed and fertilizer, in order to obtain inflated crop insurance indemnities to which he was not entitled;

In violation of Title 18, United States Code, Section 1014.

## COUNT THREE

**False Statement to Influence the United States Department of Agriculture Risk Management Agency**

The Grand Jury Further Charges:

The Grand Jury realleges and incorporates by reference the allegations of Count One of this Indictment.

On or about January 6, 2018, in the District of North Dakota,

DARREN WADE TRONSON

did knowingly make any false statement or report for the purpose of influencing in any way the action of an insurance company and the United States Department of Agriculture, acting through the Risk Management Agency/Federal Crop Insurance Corporation, in connection with the payment of crop insurance benefits, to wit: DARREN WADE TRONSON knowingly signed a production worksheet certifying the loss of potatoes in Grand Forks County due to excessive moisture on June 28, 2017, and September 19, 2017, knowing the loss was attributable to failure to employ good farming practices, to wit: insufficient seed and fertilizer, in order to obtain inflated crop insurance indemnities to which he was not entitled;

In violation of Title 18, United States Code, Section 1014.

## FORFEITURE ALLEGATION

The Grand Jury Further Finds Probable Cause That:

The felony offenses alleged in Counts One, Two, and Three of this Indictment, punishable by imprisonment for more than one year, are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(A).

Upon conviction of any Count of this Indictment,

### DARREN WADE TRONSON

shall forfeit to the United States, pursuant 18 U.S.C. § 982(a)(2)(A), all right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. § 1014.

If any of the assets described above as being subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2)(A), as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by

28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of said property described above as being subject to forfeiture.

A TRUE BILL:

/s/ Foreperson
Foreperson

/s/ Jennifer Klemetsrud Puhl_____
JENNIFER KLEMETSRUD PUHL
United States Attorney

MDG/vt